VANDER HONING v. TAYLOR.

1. TRUSTS—ACCOUNTING—BURDEN OF PROOF.
   Defendant, if admittedly a trustee, has the burden of proof to establish the correctness of his account, but where plaintiff claims a trust relation exists, and defendant denies such, plaintiff has the burden of establishing the trust relation before casting upon the defendant the burden of an accounting.

2. APPEAL AND ERROR—CHANCERY CASES—DE NOVO REVIEW.
   The Supreme Court hears equity cases *de novo*, but does give

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 54 Am Jur, Trusts §§ 509, 602.
[1] Necessity of proof by trustee that charges or expenses for which he claims credit upon an accounting were proper disbursements. 13 ALR 364.
[2] 3 Am Jur, Appeal and Error §§ 814, 815.
[3] See, generally, 3 Am Jur, Appeal and Error § 895 *et seq.*
[4, 5] 1 Am Jur, Accounts and Accounting § 42 *et seq.*
[6] 24 Am Jur, Fraud and Deceit § 209 *et seq.*
[7] 14 Am Jur, Costs § 10 *et seq.*

consideration to the findings of the trial judge because he sees the witnesses and notes their appearance on the stand.

3. SAME—CHANCERY CASES—EVIDENCE.
Very clear evidence must appear in the record of a chancery case to justify the Supreme Court in disturbing a trial court's findings of fact.

4. ACCOUNTING—GIFTS—EVIDENCE.
Finding of trial court that plaintiff executrix had not established by a preponderance of the evidence that sum of $4,180 was not a gift by deceased to defendant *held*, not erroneous. under record presented in suit for accounting, notwithstanding some conflicting statements by 76-year-old defendant.

5. SAME—UNPROBATED ESTATES—PERSONAL PROPERTY.
A circuit court, as a court of equity, can call for an accounting and adjustment between the heirs as regards to the rights to personal property, where it is established as having belonged to defendant, deceased, and their brother as well as other property belonging to deceased and estates of their parents had not been probated during some 15 years which had elapsed since parents had died.

6. FRAUD—ESTOPPEL.
Statement of defendant, complained of as having been fraudulent,. which was not made to a party to the suit and which involved the right to a sum of money, did not estop the defendant from claiming it as a gift.

7. COSTS—ACCOUNTING.
No costs are allowed in suit by an executrix against one of the heirs of decedent for an accounting, where neither party has prevailed.

Appeal from Kent; Brown (William B.), J. Submitted October 5, 1955. (Docket No. 21, Calendar No. 45,882.) Decided December 1, 1955.

Bill by Beulah Vander Honing, executrix of the estate of Eva L. Pratt, deceased, against Marion Taylor for accounting. Bill dismissed. Affirmed in part and remanded.

*John F. Livingston* (*Roger D. Anderson,* of counsel), for plaintiff.

KELLY, J. This is an action for accounting brought by Beulah Vander Honing, executrix of the estate of Eva L. Pratt, against Marion Taylor, sister of deceased. Eva Pratt retired after 40 years as a school teacher in the Grand Rapids public schools. From 1928 to July 12, 1950, she resided with her brother at the residence of one Mrs. Westveer.

In the fall of 1949, Eva Pratt became ill and was bedridden for the remainder of her life. By July, 1950, her brother thought it too much for him and Mrs. Westveer to take care of Mrs. Pratt and on July 12, 1950, she was removed to the home of her sister, defendant in this case, Marion Taylor. At that time defendant Marion Taylor was 74 years old and was residing alone in the home to which Mrs. Pratt was brought. Eva Pratt continued to reside in defendant's home and was taken care of by the defendant for the 2-month period until the time of her death on September 23, 1950.

A safe-deposit box was jointly held by deceased, defendant and Clarence Taylor, the brother of deceased and defendant. There is no dispute in this record that shortly after Mrs. Pratt came to defendant's home, defendant went to the safe-deposit box with a Mrs. Weatherwax and removed all of the contents of said box and brought same back to Mrs. Pratt.

Among the contents was a sealed envelope containing $4,180. This $4,180 represented proceeds from the sale of property belonging to a deceased uncle of decedent and defendant.

It is plaintiff's contention that decedent purchased this property from her uncle and after his death sold it for $5,500. Defendant contends that her uncle deeded the property to the deceased with the understanding that the proceeds from the sale of said property were to go to the defendant in considera-

tion of the care she gave him during his last years of life,

Mrs. Weatherwax, who accompanied defendant to the safe-deposit box, did not testify in this case. The executrix of the estate of Eva L. Pratt, however, testified that she was present when defendant brought this money back to Mrs. Pratt and that Mrs. Pratt gave the money to defendant Marion Taylor to hide it until it could be placed in another safe-deposit box to which the brother would not have access. This contention was denied by defendant, who claimed that decedent gave her the money after she brought it from the safe-deposit box as money that belonged to the defendant.

Shortly after this safe-deposit-box episode, Mrs. Pratt, on July 29, 1950, made a will. In this will she placed in trust all of her property with instructions to pay all income from said trust to defendant at convenient times, and gave the defendant the right to use any part or all of said trust estate to assure for herself a comfortable life in every respect, including payment of all medical, hospital and nursing care, and any other expense as her needs might require. The attorney who drew up this will did not testify, but a friend of the deceased, with whom she had done banking business, stated he was present and that Mrs. Pratt stated she wanted the will to give Marion Taylor access to the $4,180 as long as the defendant lived.

On September 15, 1950 (8 days before decedent's death), decedent prepared another will. In this will she referred to the fact that defendant was beneficiary on a New York Life Insurance Company policy and that she wanted it understood with defendant that the proceeds from the policy be used first to pay all deceased's debts and funeral expenses and that the balance be retained to provide defendant

with a suitable funeral. Decedent then in this will provided:

"I give, devise and bequeath unto my sister, Marion Taylor, of Grand Rapids, Michigan, such moneys as she has previously received from me."

Decedent then provided that the defendant should have a life estate in all the real property in which she had an interest on Benjamin avenue, Grand Rapids, Michigan. This Benjamin avenue property was the property where Mrs. Pratt was residing at the time of her death, and is referred to as "the old homestead" in this record.

The will then proceeded to give and devise unto deceased's daughter the remainder of the estate in fee simple.

On October 30, 1950, Eva Pratt's will of September 15, 1950, was admitted to probate and appellant, Beulah Vander Honing, was named as executrix of the estate.

On February 1, 1951, appellant filed a petition for discovery, stating that she was informed and believed that the defendant had concealed certain assets belonging to the estate and more particularly furniture, goods and chattels located in the home in which Mrs. Pratt resided at the time of death, and cash in a safe-deposit box in the amount of $4,180.

On October 1, 1951, plaintiff, executrix of the estate, and appellant herein, began the present suit for accounting. The trial court entered a decree dismissing the suit, finding that the $4,180 had been given to Marion Taylor by Eva Pratt before her death, and that the items of personal property were not identified sufficiently to justify a decree awarding them to the estate; and, further that 15 years' possession of the family furniture by the defendant

vitiated Eva Pratt's claim to a 1/3 interest in the property.

Question 1: *Did the defendant have the burden of proof in regard to her claim that the $4,180 was a gift from her uncle and deceased sister?*

Appellant contends the trial court erred in holding that the burden of proof was on the plaintiff to show that the $4,180 was not a gift. Appellant cites the case of *Grund* v. *First National Bank of Petoskey,* 209 Mich 613. That case involved a suit in accounting where plaintiff claimed that defendant owed plaintiff money because of contractual arrangements. The Court commenting upon the burden of proof stated (p 615):

"Where a trustee is called upon in a court of equity to account for the funds received by him as trustee, and the trusteeship is admitted or established, the duty rests upon the trustee to so account, and the burden of proof is upon him to establish the correctness of the account; but where a plaintiff claims the trust relation exists, and this is denied by the defendant, or the plaintiff claims a certain contract was entered into which, if entered into, would establish a trust relation, and the defendant denies such contract was entered into but insists that another contract was entered into, one which did not create the trust relation, in such case the burden is upon the plaintiff to establish the trust relation, or the contract creating such trust relation, before he casts upon the defendant the burden of an accounting. In other words, plaintiff cannot by *claiming* that the trust relation exists cast the burden of proof upon the defendant."

In the present case the trusteeship was not admitted. Defendant throughout the trial claimed that her uncle and decedent both recognized the fact that she was to receive the money from the sale of the uncle's property, and that she received said money

as a gift. The court did not err in holding that the burden of proof was not upon defendant.

Question 2: *Did the plaintiff establish by a preponderance of the evidence that the $4,180 was not a gift to defendant?*

The only proof introduced by plaintiff in regard to the $4,180 was the testimony of plaintiff-executrix that she was present when Mrs. Weatherwax and defendant brought the money from the safe-deposit box to Mrs. Pratt; that there was $4,180 in an envelope which was counted in her presence and in the presence of Mrs. Pratt, and that she heard Mrs. Pratt tell defendant "she better get that money back down into another safe-deposit box, one, that would be one that Mr. Taylor wouldn't know about, and Marion said she would take it upstairs and hide it."

Plaintiff also called to the stand a case worker for the local welfare department, who testified that when she questioned defendant on February 6, 1951 (approximately 6 months after the money was taken out of the safe-deposit box by defendant), as to what assets she had received from decedent's estate, defendant stated that she had an interest in the property where she resided and certain personal effects in the house; that she had spent $365 for her sister's funeral and had only $635 remaining from $1,000 she received from the insurance policy, and that she had to keep this amount intact for funeral expenses for her brother and herself under the terms of decedent's will.

Luther Cleaves, the uncle of deceased, defendant, and their brother, Clarence Taylor, on September 5, 1947, deeded property to decedent for $3,000, reserving a life estate for himself. After the uncle's death, Eva Pratt, on May 9, 1949, sold this property for $5,500. Clarence Taylor testified that in September, 1947, when his sister, Eva Pratt, returned from the bank after receiving the deed from her

uncle, "she said she wanted the money to go to Marion Taylor (defendant)."

Augusta Westveer testified that when Eva Pratt came back from the bank after receiving the deed to the property she told her:

" 'Mr. Cleaves made me promise I was going to give Marion this money. He said he wouldn't sign the deed until I promised him,' and she said I want Marion to have that money."

Defendant's other witness, Felix Latzek, banker, friend and business adviser of deceased, testified that he had a conversation with Eva Pratt shortly before her death about a sum of money, the exact amount of which he couldn't remember, but he knew it was over $4,000, and that Mrs. Pratt told him "she wanted to see that Miss Taylor had access to it, she would have it, she needed it, use it."

Defendant testified at the probate hearing and at the hearing in the circuit court.

At the probate hearing she testified she took the money from the safe-deposit box and claimed it was hers because she had taken care of her uncle, who gave it to her and that she had put the money in the safe-deposit box.

This statement was later contradicted when defendant testified that the deed was given to her sister in trust for her rather than placing the deed in her name so that the old-age assistance grants would not be jeopardized, and that after the sale of the property her sister put the money in the safe-deposit box.

At the circuit court trial she testified the $4,180 was given to her by her sister before her death. She admitted receiving old-age assistance after Eva's death. She again stated the money belonged to her because of her care of the uncle.

Appellant calls to this Court's attention the fact that the Supreme Court hears equity cases *de novo.* However, this does not mean that we do not give consideration to the findings of the trial judge. In *Diel* v. *Diel,* 298 Mich 127; and *Grund* v. *First National Bank of Petoskey, supra,* this Court commented upon the fact that we give due weight to the findings of the trial judge because he sees the witnesses, notes their appearance on the stand and, therefore, his conclusions are helpful to this Court, and that very clear evidence must appear in the record to justify disturbance of the trial court's findings of fact.

We do not agree with appellant that she established by a preponderance of the evidence that the $4,180 was not a gift to the defendant, or that the record clearly establishes the trial court's findings were erroneous. The record does show conflicting statements of defendant, but it must be kept in mind that she was 76 years of age. Credible witnesses establish the fact that it was the intention of the deceased to make this $4,180 accessible for use by defendant. The 2 wills, above referred to, also establish such an intention.

Question 3: *Did the trial court err in holding that the plaintiff was not entitled to an accounting for the personal property shown to have come into defendant's possession?*

The testimony of the defendant and her brother establishes that the defendant held personal property belonging to deceased and their testimony sufficiently identified the property so held. Besides the property that belonged to Eva Pratt, the record discloses that a substantial portion of the furniture in the homestead where defendant lived and where Eva Pratt died, belonged, in their lifetime, to the father and mother of Eva Pratt, defendant, and their brother, Clarence Taylor.

In his opinion the trial court commented upon the fact that evidence disclosed that Eva Pratt made no claim to any of this furniture during her lifetime and because more than 15 years had elapsed since the death of the parents it would seem futile to make a claim where the heir in her lifetime never made any claim of ownership.

We cannot agree with the court in this conclusion, and this case will be remanded to the circuit court for the purpose of having an accounting in regard to the personal property.

Over 15 years have elapsed since the death of the parents, and while there has not been administration of the estates, the record does not disclose that there are any claims against the estates and, therefore, under the decision of *Powell* v. *Pennock,* 181 Mich 588, the circuit court as a court of equity can call for an accounting and adjustment between the heirs as regards to the rights of the personal property.

Question 4: *Was the defendant estopped from claiming the $4,180 was a gift from decedent because of her statements to the case worker for the welfare department?*

Appellant cites several cases in regards to estoppel, but in each instance the fraudulent statement was made by one of the parties to the suit to the other party. The statement complained of as fraudulent in this case was not made to a party to the suit and, therefore, defendant was not estopped from claiming the $4,180 as a gift.

Affirmed in part and remanded. No costs, neither party having prevailed.

CARR, C. J., and BUTZEL, SMITH, SHARPE, BOYLES, REID, and DETHMERS, JJ., concurred.